# In Re: January 1974 Philadelphia County Grand Jury Investigation.

588

*Sheldon L. Albert,* Deputy City Solicitor, with him *Stephen Arinson* and *Nicholas Panarella,* Assistant City Solicitors, and *Martin Weinberg,* City Solicitor, for petitioners in No. 122.

*John R. Padova,* with him *Solo, Bergman & Padova,* for petitioners in No. 131.

*Walter M. Phillips, Jr.,* Deputy Attorney General, with him *Harry S. Tischler* and *Mark A. Klugheit,* Assistant Attorneys General, for respondents.

OPINION BY MR. CHIEF JUSTICE JONES, October 16, 1974:

In June of 1972 Judge Harry A. TAKIFF convened and charged a grand jury, upon the petition of the District Attorney, to investigate various aspects of official corruption in the City of Philadelphia. The convening of that grand jury was upheld by this Court in *Commonwealth ex rel. Camelot Detective Agency, Inc. v. Specter,* 451 Pa. 370, 303 A.2d 203 (1973). During the term of that grand jury twenty-one presentments were made identifying pervasive and systematic corruption and other criminal acts among public officials and em-

ployees, and numerous indictments were recommended. In addition, the June 1972 grand jury issued a final report in January of 1974 wherein it recommended that a new investigating grand jury be convened "very promptly" to inquire further into the distribution of narcotics and related payoffs to policemen, and kickbacks required of architects, engineers, milk company executives and other businessmen in exchange for procuring public contracts.

Judge TAKIFF was also assigned to supervise the January 1974 grand jury. Although the new District Attorney who took office in the beginning of January 1974 had taken no action in response to the recommendations of the June 1972 grand jury, two citizens' groups had petitioned Judge TAKIFF requesting such an investigation. These petitions which were filed by the Committee of Seventy and Americans for Democratic Action were rendered moot on January 31, 1974, however, when Judge TAKIFF charged the grand jury on his own motion to conduct an investigation into nine specified areas.[1] In order to effectuate this charge, the term

---

[1] These areas included: drug trafficking and drug-related corruption; illegal liquor sales, nuisance taprooms and Liquor Code violations as a cause of violent crime and related bribery and corruption of liquor agents and policemen; bribery and corruption in the Philadelphia Police Department; system of bribery and corruption in the awarding of public contracts; smuggling and counterfeiting and related corruption in the Cigarette Bureau; corruption and bribery within the Philadelphia District Office of the Pennsylvania Liquor Control Board; extortion by sales tax personnel within the Bureau of Taxes for Education of the Pennsylvania Department of Revenue; pattern of extortion by officers and employees of regulatory and law enforcement agencies, including the Bureau of Professional and Occupational Affairs of the Pennsylvania Department of State, and the Bureau's Pharmacy Board; and a system or systems of official corruption, including and involving payments to influence the discharge of official duties with respect to decisions, recommendations, appointment to official positions, and other governmental functions and activities.

of the grand jury was extended indefinitely and the grand jury was directed to reconvene, following completion of business, on February 11, 1974. Additionally, Judge TAKIFF requested the District Attorney to assign members of his staff to handle the investigation being conducted by the grand jury. The District Attorney, however, declined to comply with Judge TAKIFF's request and subsequent order to assign members of his staff to conduct these investigations.

Following the District Attorney's refusal to comply with Judge TAKIFF's order, President Judge JAMIESON advised the Attorney General of the Commonwealth by letter that in his judgment the matter was appropriate for intervention by the Commonwealth and requested him, pursuant to the Act of April 9, 1929, P. L. 177, art. IX, § 907, 71 P.S. § 297, to assign a special attorney or attorneys to represent the Commonwealth, attend the January 1974 grand jury and perform all the duties and responsibilities in connection therewith. The Attorney General responded to President Judge JAMIESON's request with the suggestion that there first be a request for a determination by this Court to resolve the question of the validity of the grand jury. Subsequently, the Attorney General filed a petition for declaratory judgment to determine the validity or invalidity of the grand jury and a second petition requesting that this Court assume original jurisdiction of the petition seeking declaratory relief. The merits of these petitions were the subject of oral argument before this Court on April 29, 1974. On July 1, 1974, this Court entered an opinion and order denying declaratory relief because the petitions were an effort to obtain an advisory opinion which is not contemplated under the Uniform Declaratory Judgments Act, and because the Uniform Declaratory Judgments Act does not authorize the entry of judgments in criminal matters. *Packel v. Takiff*, 457 Pa. 14, 321 A.2d 649 (1974).

Following oral argument on the petition for declaratory judgment and pending this Court's decision in that matter, the Attorney General informed President Judge JAMIESON that he was complying with his request and directing a special prosecutor and his staff to man the January 1974 grand jury and to proceed without delay. In the course of the grand jury investigation, subpoenas duces tecum dated June 10, 1974, were issued and served upon the Custodian of Records of the Philadelphia Department of Public Property, the Custodian of Records of the Philadelphia Department of Recreation, the Custodian of Records of the Philadelphia Managing Director's Office, the Custodian of Records of the Philadelphia Mayor's Office, the Custodian of Records of Frank Rizzo, Candidate, the Custodian of Records of the Philadelphia City Planning Commission and Thomas J. Mangan. On June 17, 1974, a petition for writ of prohibition was filed on behalf of the Custodians of Records of the various departments of Philadelphia named above. On June 19, 1974, a petition for supersedeas was filed and following a conference with the parties in the chambers of Mr. Justice NIX and upon consideration of the petitions, the matters were directed to be argued before the full Court on June 26, 1974, and proceedings with regard to petitioners were stayed pending the decision of this Court. On June 25, 1974, petitions for writ of prohibition and supersedeas were filed on behalf of Thomas J. Mangan and an order similar to that entered in the *Custodian of Records* case, directing argument before the full Court on June 26, 1974, and staying the proceedings, was entered by Mr. Justice NIX.

Subsequent to oral argument in the *Custodian of Records* and *Mangan* cases, a petition for writ of prohibition in the nature of a taxpayer's action was filed by Joseph I. Fineman on July 10, 1974. A petition to assume plenary jurisdiction was also filed by Fineman on July 10. On July 11, 1974, petitions for a writ of pro-

hibition and supersedeas were filed on behalf of Otto Winter and Nora Slavin as taxpayers and recipients of subpoenas ad testificandum. An order was entered upon these petitions directing that briefs be filed by July 18, 1974,[2] and that the subpoenas not be enforced pending this Court's final decision on the merits of the petition for writ of prohibition. On July 25, 1974, petitions for writs of prohibition were filed on behalf of Martin Weinberg and Meridian Engineering, Inc. On July 26, petitions for writs of prohibition were filed on behalf of Charles Frank and Augustine Salvitti and on behalf of Gary Friedman. Orders on all four of these petitions were entered on July 26, 1974, directing that the subpoenas not be enforced pending this Court's determination on the merits of the petitions. The final petition for writ of prohibition relevant to this opinion was filed on behalf of Louis Cissoni on July 30, 1974. On that same date, because of the public importance of a prompt disposition, the above-described petitions were denied by per curiam orders (Mr. Justice EAGEN, Mr. Justice NIX and Mr. Justice MANDERINO dissenting) with the indication that an opinion was to follow. This is that opinion.

Because the relief sought in all nine of the petitions is the same, *i.e.*, the termination of the January 1974 grand jury investigation, we have elected to address collectively the issues raised by the various petitioners.[3] Petitioners' arguments in support of a writ of prohibition are essentially tenfold: (1) Judge TAKIFF was without authority to charge the January 1974 grand jury on

---

[2] The parties in the *Custodian of Records* and *Mangan* cases had also been given until this date to file supplemental briefs on the merits if they so desired.

[3] We fully recognize that a substantial question of the standing of custodians of records to challenge the validity of the grand jury is presented. However, having ruled on the merits of the petitions of the taxpayer-petitioners who unquestionably have standing (*see, e.g., Smith v. Gallagher*, 408 Pa. 551, 185 A.2d 135 (1962)), we need not dwell on the issue of the other petitioners' standing.

his own motion to conduct an investigation; (2) the January 1974 grand jury was a nullity because of the order of this Court dated December 17, 1973; (3) the term of the January 1974 grand jury was unlawfully extended; (4) the grand jury investigation is approaching impermissible permanency; (5) the legal prerequisites for maintaining a grand jury investigation have not been met; (6) there is no authority for the Attorney General to appoint a continuing, permanent prosecutor to supersede the District Attorney on a large and indefinite body of cases; (7) the Attorney General abused his discretion and exceeded his authority in superseding the District Attorney in this case; (8) the use of federal funds to aid in the enforcement of state criminal law violates the doctrine of federalism under Articles I and II of the United States Constitution; (9) the use of federal funds to finance the office of the special prosecutor is not an authorized expenditure under the Law Enforcement Assistance Act of June 19, 1968, P. L. 90-351, Title I, § 100, *as amended,* 42 U.S.C. 3701; and (10) that the subpoenas were void for lack of specificity and failure to show on their face that the requested documents are germane to the scope of the grand jury inquiry.

Initially, we can dismiss petitioners' arguments numbered (6) through (9) as not being cognizable by this Court in a petition for writ of prohibition. The writ of prohibition is to be used with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity to secure order and regularity in *judicial* proceedings if none of the ordinary remedies provided by law are applicable or adequate to afford relief. *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 102, 61 A.2d 426, 430 (1948). The office of the writ is to prevent an unlawful assumption of jurisdiction by an inferior *court,* not to correct mere errors and irregularities in matters over which the court has cognizance.

*Commonwealth v. Mellon National Bank & Trust Co.,*
360 Pa. 103, 61 A.2d 430 (1948). Questions relating to
the Attorney General's supercession, the appointment of
a special prosecutor, and the funding of the special
prosecutor's office are in no way pertinent to the rele-
vant inquiry properly before the Court of whether Judge
TAKIFF exceeded the bounds of his jurisdiction, and ac-
cordingly they will not be considered in this opinion.
The challenge to the subpoenas is also not properly
raised by writ of prohibition either initially, *Common-
wealth v. Mellon National Bank & Trust Co., supra,* or
following denial of a motion to quash in the court be-
low, *In re: Petition of Arlen Specter,* 455 Pa. 518, 317
A.2d 286 (1974).

Turning to those issues properly before the Court,
we first address the question of whether Judge TAKIFF
exceeded his jurisdiction when he charged the January
1974 grand jury to conduct an investigation.[4] Divorc-
ing the question of the power of the court to direct a
grand jury investigation on its own motion from the
question of the court's power to convene a special grand
jury, our case law clearly indicates that Judge TAKIFF
did not exceed his jurisdiction when he charged the
January 1974 grand jury. The seminal decision in this

---

[4] Petitioners have also made the related contention that Judge
TAKIFF was without authority to *convene* a special grand jury. This
argument is without merit and in disregard of the fact that Judge
TAKIFF was assigned by the President Judge of the Court of Com-
mon Pleas to empanel the January 1974 grand jury and that this
grand jury is *not* a special grand jury. The distinction between a
special grand jury and a grand jury conducting a special investiga-
tion was aptly clarified by Mr. Justice MUSMANNO in *Smith v. Gal-
lagher,* 408 Pa. 551, 185 A.2d 135 (1962): "The confusion between a
Special Grand Jury and a Regular Grand Jury conducting a special
investigation has produced a terminological melange to which, un-
fortunately, even judges have contributed. Lamentably, even in the
State Reports, the phrase 'Special Grand Jury' is occasionally used
when the writer really has in mind a Regular Grand Jury conduct-
ing a special investigation." *Id.* at 568, 185 A.2d at 143.

Commonwealth concerning the court's power in this regard is *Case of Lloyd and Carpenter*, 3 Pa. L. J. R. (Clark) 188 (Phila. Q. S. 1845), wherein Judge KING spoke of certain extraordinary modes of criminal procedure: "The first of these is, where criminal courts *of their own motion* call the attention of grand juries to and direct the investigation of matters of general public import, which, from their nature and operation in the entire community, justify such intervention." *Id.* at 192. (Emphasis added) This language has frequently been cited with approval by this Court. *See, e.g., Special Grand Jury Case*, 397 Pa. 254, 154 A. 2d 592 (1959).

In *McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936), this Court recognized the grand jury as an arm of the court and under its control with no power to initiate an investigation unless charged to do so *by the court.* While neither a grand jury nor any of its members has power to initiate an investigation, the court on its own motion may order such an investigation with *or without* a memorial from private citizens or a petition from a prosecuting attorney. *In re Grand Jury Investigation of Registration Comm'n, etc.*, 22 Pa. D. & C. 2d 285 (Phila. Q. S. 1960). The power of the court to order an investigation is subject to certain limitations proscribed in *McNair*, none of which include an initiating petition or memorial by the District Attorney or other persons. The court's power to direct a grand jury in-

---

". . . A Special Grand Jury is one that is chosen *specially* to investigate specially into certain conditions, and then make recommendations. It has no other purpose than this. A Regular Grand Jury (although it is usually simply called a grand jury) is one which is convened in the normal course of court business to receive complaints and accusations and find bills of indictment where they are satisfied a trial ought to be had. Such a grand jury, of course, is also available for the purpose of conducting investigations under special instructions from the court. In Philadelphia County a regular grand jury is assembled the first Monday of each month throughout the year." *Id.* The *empaneling* of the grand jury in this case was clearly within the authority of Judge TAKIFF.

vestigation on its motion has also been upheld by this Court and the Superior Court in the context of challenges to indictments which have emanated from such investigations. *See Commonwealth v. Hurd,* 177 Pa. 481, 35 A. 682 (1896); *Commonwealth v. Hackney,* 117 Pa. Superior Ct. 519, 178 A. 417 (1935); *Commonwealth v. Dietrich,* 7 Pa. Superior Ct. 515 (1898).

Although it may be true, as noted by Mr. Justice COHEN in his concurring opinion in *Hamilton Appeal,* 407 Pa. 366, 371, 180 A.2d 782, 785 (1962) (concurring opinion), that this Court has never before permitted a grand jury investigation where there was neither a petition by a duly constituted law enforcement official or memorial by an official group of citizens, this observation is not relevant to the disposition of the present issue. The more pertinent factor for our guidance which can be adduced from those cases listed in Appendix A of *Hamilton Appeal* is that no grand jury investigation has ever been prohibited for lack of an initiating petition or memorial.

Petitioners have isolated the following language from this Court's opinion in *Dauphin County Grand Jury Investigation Proceedings (No. 1),* 332 Pa. 289, 2 A.2d 783 (1938), for the proposition that a petition from the District Attorney is the sine qua non for a grand jury investigation: "To ground the inquiry there must not be the mere charge of crime by an individual, but there must be, in the opinion of the District Attorney and the Court, evidence on hand of actual crime sufficient to promise the assurance of one conviction for each of the particular offenses charged." 332 Pa. at 306-07, 2 A.2d at 792. We must be mindful, however, that the question presented in *Dauphin County Grand Jury* was the legal sufficiency of the petition of the District Attorney to warrant a grand jury investigation. The holding of the Court was that the petition was inadequate in failing to charge the commission of specific crimes within a

system of related crimes. As the Court made clear in *Dauphin County Grand Jury* the above-quoted language is not at all suggestive that a petition by the District Attorney is a requisite, but rather an exemplification of the rule set forth in *McNair's Petition* that "the court must have knowledge or definite information from trustworthy sources that criminal acts forming a system of criminal violations of the law have been committed. . . ." 332 Pa. at 298, 2 A.2d at 788. Since the information supplied the Court in that particular case emanated from the District Attorney's petition it was necessary to analyze the requirements in that context. The position of petitioners is further belied by *Philadelphia County Grand Jury Case,* 347 Pa. 316, 32 A.2d 199 (1943), where the lower court had been presented with a memorial from the Committee of Seventy, this Court was unanimously of the opinion that the Court of Quarter Sessions had the power, on a proper showing, to direct a grand jury investigation, the Court, however, being divided as to whether a writ of prohibition should lie under the facts of that case.

The second argument presented by petitioners clearly lends no support to their attack on the validity of the investigation of the January 1974 grand jury. The granting by this Court of the petition of the Court of Common Pleas of Philadelphia County that procedure by indictment be replaced by procedure by information in criminal cases pursuant to the amendment to Article I, Section 10 of the Pennsylvania Constitution can in no way be said to have affected the institution of the grand jury as an investigative arm of the court.[5]

---

[5] Initiation of criminal proceedings by information in Philadelphia County was originally to be effective January 1, 1974, but by subsequent order of this Court dated February 28, 1974, the effective date was postponed until such time as appropriate rules or statutory provisions governing the information process are promulgated.

Petitioners next contend that the term of the January 1974 grand jury was unlawfully extended. Petitioners seek to distinguish the present case from that of *Shenker v. Harr*, 332 Pa. 382, 2 A.2d 298 (1938), which dealt with the power of the court to hold a regular grand jury over beyond its term to permit it to complete business already *begun* during its regular term. Petitioners have neglected to consider the effect of Rule 204 of the Pennsylvania Rules of Criminal Procedure which was adopted subsequent to *Shenker v. Harr, supra,* and is dispositive of this issue. Rule 204 provides: "A grand jury may be retained from time to time and term to term in order to complete business which was *presented* during the period for which it was originally summoned." (Emphasis added) Judge TAKIFF charged the jury to conduct the investigation during the period for which it was originally summoned, albeit the last day. Consequently, the holding over of the grand jury comports with Rule 204 and was within Judge TAKIFF's power.

The fourth argument in support of a writ of prohibition advanced by petitioners is that the grand jury investigation is approaching impermissible permanency. The January 1974 grand jury, having been convened for only nine months, cannot at this stage be said to have reached its permissible limit. Thus, the admonition in *Shenker v. Harr* against anything approaching permanency in a grand jury is not presently applicable. Petitioners raise a related point which has not heretofore been addressed by this Court, *i.e.*, whether successive investigations by different grand juries of similar areas of corruption give rise to the same evils found to be repugnant in *Shenker v. Harr*. We resolve this question in the negative because each time a new grand jury is convened there is a judicial reevaluation of the prerequisites for maintaining a grand jury investigation. The fact that a previous grand jury has investigated the same area is not a factor which must be considered if

an analysis of the situation indicates that a grand jury investigation is warranted in light of the narrow set of circumstances set forth in *Commonwealth ex rel. Camelot Detective Agency, Inc. v. Specter*, 451 Pa. 370, 303 A.2d 203 (1973), which makes such an inquiry appropriate.

Petitioners finally argue that the *Camelot* prerequisites have not been met. In *McNair's Petition* this Court set forth seven criteria which must be met to justify a grand jury investigation: (1) such an investigation must have a definite purpose to uncover criminal acts which seriously affect or injure the public generally; (2) the investigation may not be aimed at individuals nor at the commission of ordinary crimes, but should be matters of a criminal nature wherein public officers or the interests of the general public are involved; (3) the ordinary processes of the law must be inadequate to cope with or discover such offenses; (4) the acts must be part of a criminal conspiracy, systematic, or of a widespread nature; (5) at least one or more cognate offenses must exist upon which to base the general investigation; (6) the criminal acts being investigated must require immediate attention; and (7) the court must have reasonable cause from direct knowledge or knowledge gained from trustworthy information to believe that an investigation will disclose some criminal conduct which is within the competence of the grand jury to investigate and within the jurisdiction of the court to punish. 324 Pa. at 61-62, 187 A. at 504-05. More recently, in *Camelot*, we summarized the minimum requisites for calling a grand jury investigation as follows: "(a) the subject matter of the investigation must affect the members of the community as a whole, rather than as individuals; (b) the investigation must be aimed at conditions and not primarily at individuals; (c) the ordinary processes of the law must be inadequate to cope with the problems; (d) the investigation must have

a defined scope, be aimed at crimes and supported by information indicating the existence of a system of related crimes or a widespread conspiracy; (e) information as to the crimes must come from direct knowledge or a trustworthy source." 451 Pa. at 374, 303 A.2d at 205, *citing Commonwealth v. McCloskey*, 443 Pa. 117, 137 n. 26, 277 A.2d 764, 774 n. 26, *cert. denied*, 404 U.S. 1000 (1971).

Here, we must look to the charge of Judge TAKIFF to ascertain if the above standards have been met. In doing so, we conclude that the minimum requisites required by *Camelot, McCloskey* and *McNair's Petition* have been met and that Judge TAKIFF properly directed a grand jury investigation. The investigation of the nine general areas listed in footnote 1, *supra*, clearly indicates that the investigation is aimed at systems of crimes involving conditions affecting the community as a whole. That the ordinary processes of the law are inadequate to cope with the problems is clear, as further evidenced by the experience of the June 1972 grand jury. Finally, there can be no question that the information as to the crimes forming the basis of the investigation was direct and from trustworthy sources. The information came from Judge TAKIFF's own knowledge as supervising judge of the June 1972 grand jury, the presentments and recommendations of the June 1972 grand jury, and the testimony of witnesses who appeared before the June 1972 grand jury.

For the reasons detailed above, we are of the opinion that petitioners are not entitled to relief in the nature of writs of prohibition. Accordingly, we entered our orders of July 30, 1974, denying their petitions.

Mr. Justice EAGEN and Mr. Justice NIX dissent.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. For the first time, the majority authorizes a judge to leave the *neutral* judicial branch and join the

*prosecuting* executive branch of government. There is no legislative or constitutional authority for such a decision. The precedent is dangerous.