## City of Pittsburgh, et al. (Consumers), Milk Marketing Board Appeals.

Argued October 31, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Eugene B. Strassburger, III,* Executive Assistant City Solicitor, with him *Ralph Lynch, Jr.,* City Solicitor, for appellants, City of Pittsburgh and Eugene B. Strassburger, III, and Ralph Lynch, individually.

*Stanley Weinberg,* with him *Peter D. Jacobson,* Neighborhood Legal Services, for appellant, Alliance for Consumer Protection-Hill District Branch and William Butler, individually, Elaine Abdullah, individually, and Laverda Jones, individually, and Joyce Collie individually, on behalf of themselves and on behalf of all others similarly situated.

*Charles M. Guthrie,* Assistant Attorney General, with him *W. W. Anderson,* Deputy Attorney General, *Richard J. Orloski,* Deputy Attorney General, and *Walter J. Sullivan,* Chief Counsel, for appellee, Milk Marketing Board.

*Willis F. Daniels,* with him *Daniels and Swope,* for intervenors, Greater Pittsburgh Dairy Industry Association, et al.

OPINION BY JUDGE KRAMER, January 23, 1973:

This is an appeal from Official General Order No. A-770, dated May 3, 1972, of the Pennsylvania Milk Marketing Board (Board) which became effective May 11, 1972, by the City of Pittsburgh, et al. (City) and the Alliance For Consumer Protection, et al. (Alliance). Order No. A-770 fixed minimum prices for milk and milk products and otherwise regulated the production, marketing and distribution of milk and milk products in the Southwestern milk area, known as Area No. 7.

The real genesis of this case occurred on May 11, 1970, when 27 dairy dealers, which companies comprise the Greater Pittsburgh Dairy Industry Association (Dairy Association), which is also an Intervening Defendant in this case, filed a Petition with the Board seeking an increase in the prices of regulated milk and milk products. The initial proceedings resulted in Official General Order No. A-762, dated September 3, 1970, from which an appeal was taken to this Court. On March 5, 1971, this Court filed an Opinion and Order at *City of Pittsburgh v. Pennsylvania Milk Marketing Board*, 1 Pa. Commonwealth Ct. 300, 275 A. 2d 115 (1971), from which no appeal was taken. That Order stated: "Now, March 5, 1971, it is hereby ordered that the record in this proceeding be remanded to the Milk Marketing Board for further hearings consistent with this opinion; with the prices as fixed in Official General Order No. A-762 to remain in effect consistent with this opinion." 1 Pa. Commonwealth Ct. at 326, 275 A. 2d at 128. In effect, this Court remanded the case back to the Board with specific directions to hold, first, a limited hearing dealing solely with the question of whether "net sales" included all proper adjustments, and, second, a general hearing on all aspects of the case with certain specific directions to the Board. The Board held hearings on the "net sales" issue and on

April 16, 1971 issued its Official General Order No. A-766, from which no appeal was taken.

On April 26, 1971, the City filed a Complaint in Mandamus in this Court praying for revocation of Orders Nos. A-762 and A-766 on the basis that the Board had not rendered its adjudication within thirty (30) days from the date of the entry of the Order of Court remanding the case back to the Board. The City relied on §801 of the Milk Marketing Law, Act of April 28, 1937, P. L. 417, §801, as amended by the Act of July 31, 1968, P. L.      , No. 294, §40, 31 P.S. §700j-801. By Order of this Court dated December 28, 1971, we sustained the Preliminary Objections of the Board and the Dairy Association and dismissed the Complaint. No appeal was taken from this Order.

It is interesting at this point to note that the Opinion of this Court in this latter case, reported at *Pittsburgh v. Milk Marketing Board,* 4 Pa. Commonwealth Ct. 208 (1971), made specific reference that: "The prices as set forth in General Order No. A-762 and as affirmed by the Board in General Order No. A-766, were to remain in effect while the Board was holding hearings on those other matters as required by the aforementioned opinion of this Court." 4 Pa. Commonwealth Ct. at 210. In any event, on the general remand, the Board conducted some seventeen (17) days of hearings, and on March 30, 1972, the Board issued its tentative General Order No. A-770 together with its tentative Findings of Fact. Pursuant to the provisions of §801 of the Act (31 P.S. §700j-801), the Board conducted a conference with the parties, after which its Official General Order No. A-770 was issued on May 3, 1972, to become effective May 11, 1972, from which this appeal was taken. On or about May 31, 1972, the City and Alliance filed timely appeals with this Court from Order No. A-770.

On May 11, 1972, the Board amended its prior Orders (Orders No. A-762 and A-770) to correct certain technical errors made in those prior Orders. This amending Order (Order No. A-771) was to become effective May 19, 1972. On June 16, 1972, Alliance took an appeal from this amending Order, but the City did not take such an appeal. This latter appeal was given our Docket No. 603 C.D. of 1972 and was consolidated for argument.

The appeal of the City is limited to a general contention that the Board abused its discretion and committed an error of law in failing to provide for refunds to all of the consumers which the City represents, for the twenty-month period (September 14, 1970 through May 11, 1972) during which the dairy dealers were permitted to charge and collect the increased charges for milk and milk products as set forth in Order No. A-762, which were higher than those contained in Order No. A-770. Alliance, in addition to this refund contention made by the City, also appealed on the ground that the minimum fixed price for some milk products regulated by the Board were not reduced in Order No. A-770 and that the record did not support the higher prices of these unchanged milk product items. In addition, Alliance appealed on the basis that some portions of the uniform system of accounts which had been approved by an Order of the Board, in compliance with the direction of this Court, did not meet the statutory requirements imposed on the dairy dealers by the Legislature. It is interesting to note that Alliance specifically stated in its appeal that it was not appealing from the Board's fixing of minimum out-of-store consumer prices set in Order No. A-770 which had been reduced by the Board. In the appeal, docketed at No. 603 C.D. 1972, Alliance also raised an issue concerning the failure of the Board to set wholesale prices for milk and milk products sold by stores to consumers.

The Board and the Dairy Association filed motions to dismiss generally based upon (1) a contention that there is no legal ground for the Board to order refunds to consumers, and (2) so far as the Alliance appeal is concerned, it had no standing because it was not an aggrieved party injured by Orders Nos. A-770 and A-771, nor was it aggrieved by any application of the uniform system of accounts as promulgated by Order No. A-768[1] or by its application in this case. In a separate motion, the Board moved to dismiss on the ground that wholesale sales by stores is not included in the statute.

By an Order of this Court dated June 13, 1972, signed by the President Judge, argument was held and restricted to the motions to dismiss. This Opinion, therefore, will not speak to the merits of the case and will be restricted solely to the motions to dismiss.

The Opinion will be subdivided into various parts designated by subtitles.

## REFUNDS

The entire brief of the City and part of the Alliance's brief set forth generally that because the dairy dealers were permitted to collect the fixed minimum prices for milk and milk products as set forth in Order No. A-770, for the twenty-month period, that the consumers have been overcharged, resulting in an unjust enrichment to the dairy dealers and the retail stores. For the purposes of simplicity in this section of this Opinion, we will refer solely to the City, although we include Alliance in the City's refund contentions. The City quite frankly admits that there is no *specific* statutory mandate, direction or authority for the Board to order refunds to consumers. In spite of this fact, the

---

[1] This Order resulted from separate hearings restricted to the establishment of a uniform system of accounts.

City contends that the Board has "implied power" which it received from the general statement of legislative intent found in the Act, wherein the Legislature sets forth that one of the purposes of the legislation and the Board is to protect the public. The City relies heavily upon dictum found in *Colteryahn Sanitary Dairy v. Milk Control Commission of Pennsylvania*, 332 Pa. 15, 1 A. 2d 775 (1938) wherein our Supreme Court said: "The question has arisen as to the status of those dealers who do not care to file a bond, and who pay the Commission's price, in case the court below determines the order unreasonable, and the Commission is required to fix a lower price. There is no provision in the Act as there is in the Public Utility Law, for a refunding order, but it may be that the Commission, within its *implied powers,* could relieve such dealers from loss of unlawful amounts paid, by adjusting future sales to them by the producers." (Emphasis added.) 332 Pa. at 25, 1 A. 2d at 780. The City also cites several utility rate case opinions in which there is supportive language that a utility commission may order refunds under similar facts. The major problem in attempting to use utility rate cases as a base is twofold. First, the statutes which set forth the authority of the administrative agency usually specifically refer to refunds for overcharges by the utility. Secondly, in utility cases, there are metered sales from which the utility can readily determine the amount of the refund due each of its customers. It is recognized by the City that the consuming public makes millions of purchases of milk and milk products in a year, creating an almost impossible circumstance under which specific refunds could be determined.

Administrative agencies in this Commonwealth have only those powers and authority granted to them by the Legislature. Regulatory agencies can do no more than the law permits. There is no specific statutory author-

ity granted to this Board to grant refunds. We agree with the dictum quoted above from the *Colteryahn* case, that it would be within the implied power of the agency to adjust the prices fixed for milk and milk products *in the future*.

However, that case is distinguishable from this case, in that there the Court was dealing with prices paid by dealers whose purchases were readily ascertainable, whereas here we are dealing with unknown number of the consuming public and retail stores whose purchases and sales are not ascertainable.

The City argued that even if it is impossible to order a refund to the consumers who purchased milk during the said twenty-month period, this Court should order a hearing to determine this fact; and then thereafter to order, either by this Court directly or through the Board, the payment of monies which could not be refunded to consumers (who could not prove their purchases of milk) to some charitable or educational institution under the doctrine of *cy pres*. The City has offered no precedent for this approach, and we can find none. As a matter of fact, our reading of the new escheats law of this Commonwealth, known as the Disposition of Abandoned and Unclaimed Property Act, Act of August 9, 1971, P. L.    , No. 74, 27 P.S. 1-1 et seq., would prohibit such a disposition of unclaimed funds.

Perhaps the most glaring defect in the City's position on refunds is the procedural format followed by the City in this case. The City was fully aware of the Order of this Court which continued the prices fixed in Order No. A-762, pending the remand hearings. The City saw fit neither to seek an amendment of that Order nor to appeal. The City had a second chance to seek an amendment or an appeal, but it also failed to take any action on this Court's Order dated December 28, 1971. Furthermore, the City (at this point we do not

include Alliance) is apparently satisfied with all of the minimum prices set in Order No. A-770 for it has not taken an appeal in regard to those prices. We do not determine that this Court would have granted such a petition, but the point is that this Court should not be asked now to cure defects in the City's approach to this case. At the very least, the time to have made refunds the subject for adjudication was at the general remand hearings wherein the Board could have considered refunds as a specific issue and been given the opportunity to make a specific reference to whatever adjustments it might have made, or which might already be included in, General Order No. A-770. It is also important to note that the dairy dealers and the merchants could not legally sell milk or milk products at a price less than that set by an existing effective Order of the Board. We acknowledge, as the City contends, that the minimum price is for all practical purposes the maximum price, but so long as this Act stands, no licensed seller of milk or milk products in this Commonwealth may sell at prices less than those established in the Orders of the Board.

In conclusion, we hold that the record in this case does not support any contention for refunds to the consumers of milk and milk products from the dairy dealers and the retail stores.

### STANDING

The Milk Marketing Law, 31 P.S. §700j-901 states: "Any person aggrieved by an order of the board fixing, revising or amending the price at, or the terms upon, which milk may be bought or sold, or by any other general action, rule, regulation or order of the board, may, within twenty (20) days after the effective date of such action, rule, regulation or order, file an appeal therefrom in the Court of Common Pleas of Dauphin County. No such appeal shall be permitted to act as a

supersedeas, except on special order of court. Refusal by the board of any application for revision or amendment, filed as provided in section eight hundred one, shall constitute an appealable action within the meaning of this section."

This section, of course, was repealed in part by the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, 17 P.S. §§211.101 et seq., which provides for appeals to this Court within thirty days. The Board and the Dairy Association point to the case of *Louden Hill Farms, Inc. v. Milk Control Commission*, 420 Pa. 548, 217 A. 2d 735 (1966), wherein our Supreme Court said:

"Who is a 'person aggrieved' has been explained many times by this Court . . . this Court reiterated what it had said in Lansdowne Borough Board of Adjustment's Appeal, 313 Pa. 523, 525, 178 Atl. 867, 868 (1934):

" 'A cardinal principle, which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a direct interest in the subject matter of particular litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial.' " To be thus aggrieved the interest of the party must be adversely affected by the order, judgment or decree appealed from. Thus, in Atlee Estate, 406 Pa. 528, 532, 178 A. 2d 722, 724 (1962), this Court said: " 'A party is "aggrieved" when he is directly and adversely affected by a judgment, decree or order and has some pecuniary interest which is thereby injuriously affected.' " 420 Pa. at 550-551, 218 A. 2d at 736-737. The Court also said later: "To determine what the rights of the party are it is necessary to look to the Act as

well as the pertinent facts." 420 Pa. at 551, 217 A. 2d at 737. Here, Alliance represents four specific individuals living in the City of Pittsburgh, and all consumers of milk as a class in Allegheny County. Following the guideline of *Louden Hill Farms, supra,* and our Opinion at *City of Pittsburgh v. Milk Marketing Board,* 1 Pa. Commonwealth Ct. 300, 275 A. 2d 115 (1971), we conclude that the four specific individuals represented by Alliance are aggrieved parties having a direct interest which is immediate and pecuniary which would permit Alliance to have standing in this appeal. On the question of standing, we fail to discern any difference between Alliance representing milk consumers and the Dairy Association representing dairy dealers. Alliance participated in the remand hearing before the Board. We realize that the Court in *Louden Hill Farms, supra,* spoke of "substantial interest," and we are fully cognizant that the amount of increase involved may be in pennies per quart, but we must further take cognizance of the fact that the Milk Marketing Law was intended to protect just such citizens, and therefore, they must be deemed to be aggrieved persons with standing to appeal.

### WHOLESALE SALES TO CONSUMERS

The main thrust of Alliance's appeal at No. 603 C.D. 1972 is that the Board committed an error of law in failing to fix wholesale prices for milk and milk products sold in stores to consumers.

Alliance points to Section 802(4), 31 P.S. §700j-802 (4), which states in pertinent part:

"The board shall fix, by official order (except as hereinafter provided in this section), the minimum wholesale and retail prices, and may fix, by official order, the maximum wholesale and retail prices, to be charged and received by milk dealers or handlers for milk sold, delivered, handled or consigned within any

milk marketing area of the Commonwealth, whereso-
ever produced, including milk sold, delivered or con-
signed by:

"(4) Stores to consumers, except for consumption
at the store where sold."

Alliance contends, that since the Board fixed "dis-
count" prices for volume sales for home deliveries, it
was error not to likewise fix similar prices for volume
sales in the stores. The Board counters with its con-
tention that the word "wholesale" should be given its
common meaning, i.e., that they are sales contemplat-
ing resale and not sales for ultimate consumption.

Although Alliance's argument appears to be spe-
cious, absent argument on the merits, we cannot rule as
a matter of law that Alliance has not presented a proper
issue to be determined on its merits. Therefore the
motion to dismiss cannot be granted on this issue.

### OTHER MATTERS

The Board in its Motion to Dismiss the Alliance
appeal (at No. 531 C.D. 1972) raises the issue that the
appeal does not comply with the provisions of §904 of
the Milk Marketing Law, 31 P.S. §700j-904, which pro-
vides in part: "The appeal provided by this article
from action of the board shall be by petition against
the board, officially a defendant, alleging therein in
brief detail the action and decision complained of, and
praying for a reversal thereof. Such petition shall
specify the petitioner's objections to the action and
decision of the board, and shall state facts in support
of such objections sufficient to constitute a prima facie
case; and any objection not so specified and supported
by facts shall not be considered by the court."

Following the guidelines of the statute, we have
reviewed the petition for appeal of Alliance and con-
clude that it does contain, at least in part, sufficient
objections to the decision of the Board which may be

considered by this Court on appeal. Without going into all of the details of the rather long petition for appeal, we note that the following paragraphs, which are in compliance with §904 of the Milk Marketing Law, are proper subjects for appeal. They are paragraphs 32-a, 32-b, 32-c, 40, 41, 42 (in its entirety), 43 and 44 (in its entirety).

## SUMMARY

In summary then, we hold that the Petition for Appeal filed by the City should be dismissed for the reason stated in this Opinion, and that the Motion to Dismiss the Petition for Appeal of Alliance should be dismissed in part, and therefore we

## ORDER

AND Now, this 23rd day of January, 1973, based upon the pleadings filed, and after argument, the Motion to Dismiss the Appeal filed by the City of Pittsburgh and Eugene Strassburger, III, and Ralph Lynch, Jr., individually, is hereby granted, and it is ordered that the Petition to Appeal by the City of Pittsburgh, et al., be and hereby is dismissed; and further, the Motion to Dismiss the Petitions for Appeal filed by the Alliance for Consumer Protection—Hill District Branch and William Butler, Elaine Abdullah, Laverda Jones and Joyce Collie, individually, is hereby denied insofar as the Motion pertains to the following paragraphs of: (a) Petition for Appeals at No. 531 C.D. 1972, one (1) through thirty-one (31), 32-a, 32-b, 32-c, 40, 41, 42 (in its entirety), 43 and 44 (in its entirety); (b) Petition for Appeal, at No. 603 C.D. 1972, one (1) through twenty-five (25); and (c) as to all other paragraphs of said petitions for appeal by Alliance the Motion to Dismiss is granted; and it is further ordered that this case be placed on the next available Argument List for argument on the merits restricted to the above-enumerated paragraphs of the Petitions for Appeal filed by the Alliance for Consumer Protection, et al.