584 A.2d 399

**Norbert BABAC and Anne Martin Criss, Individually and on behalf of all other area 5 Milk Consumers, Petitioners,**

**v.**

**PENNSYLVANIA MILK MARKETING BOARD, Respondent (Two Cases).**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1990.

Decided Dec. 14, 1990.

Thomas J. Finucane, Wingerd and Long, Chambersburg, for petitioners.

Thomas M. Crowley, Chief Counsel, Harrisburg, for respondent.

John J. Bell, Camp Hill, for intervenor, Pennsylvania Farmers' Ass'n.

Donn L. Snyder, Boswell, Snyder, Tintner & Piccola, Harrisburg, for intervenor, Pennsylvania Food Merchants Ass'n.

Allen C. Warshaw, with him, Donald A. Tortorice, Duane, Morris & Heckscher, for intervenors, Colteryahn Dairy, Inc., et al.

Before COLINS and PELLEGRINI, JJ., and NARICK, Senior Judge.

COLINS, Judge.

Norbert Babac and Anne Martin Criss (petitioners) appeal two orders of the Pennsylvania Milk Marketing Board (Board) setting minimum producer, wholesale and retail prices for fluid milk products sold in Milk Marketing Board Area 5.[1]

On April 24, 1990, the Board adopted Order A–866 (effective during May, 1990), and subsequently adopted Amended Order A–866 (effective June, 1990 through the present).

1. Pennsylvania Milk Marketing Board Area 5 includes Allegheny, Armstrong, Beaver, Butler, Clarion, Crawford, Erie, Fayette, Greene, Lawrence, Mercer, Venango, Washington, and Westmoreland Counties.

Prior to adopting said orders, the Board, on April 23, 1990, held a conference to hear comments of interested parties and to vote on the order after having considered the comments presented. In compliance with the Sunshine Act,[2] notice of this conference was given to the public, as well as individual notice given to all parties who had indicated an interest in the Area 5 hearings.

Although only one Board member of the required three-member quorum was physically present at the conference, a speakerphone allowed all Board members to communicate with each other and with all meeting attendees, who were comprised of milk producers, dealers, and retailers.

After hearing the comments presented, the Board voted unanimously to adopt the order as amended, increasing minimum wholesale milk prices to provide a 3.25% profit, rather than the 3.0% increase as set forth in the original order. In support of this amended order, the Board made findings of fact and conclusions of law that, to ensure milk dealers and retailers a reasonable return, a pre-tax rate of return of 3.25% (rather than 3.0%) was the most equitable, in view of projected inflation and price fluctuation factors.

Petitioners seek a review of this order on the basis of the following issues: (1) whether the Board's unanimous action was invalid because no agency member was appointed as the Board consumer member with the advice and consent of the Senate; (2) whether the Board could hold an official meeting and take official action when only one of its three members was actually present, and the other two participated through a speakerphone that communicated between Board members and meeting attendees; (3) whether the Board correctly determined that the minimum price levels established by its amended order (increasing dealers' rate of return from 3.0% to 3.25%) met the requirement of ensuring milk dealers and retailers a reasonable return; (4) whether the Board abused its discretion in refusing to address petitioners' challenge with respect to aggregate milk sales, lowfat milk differential and school discount issues; and (5)

2. Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

whether this Court, in the event it vacates the Board's order, can mandate a refund for the consumer.

■ Petitioners first contend that the Board's unanimous action was invalid because no Board consumer member had been appointed with the advice and consent of the Senate, in compliance with Section 201 of the Milk Marketing Law (Law),[3] which provides in pertinent part:

There is hereby created an independent administrative board to be known as the Milk Marketing Board. The board shall consist of three members nominated and appointed by the Governor, by and with the advice and consent of two-thirds of all the members of the Senate,.... [O]ne shall be appointed to represent consumer interests....

31 P.S. § 700j–201.

Petitioner argues that although the Board was comprised of three members since October, 1989, none of the three was appointed as the Board consumer member with the advice and consent of the Senate.

The factual record indicates that on January 31, 1990, at an emergency Sunshine Board meeting, Mr. Derry, already a member of the Board, announced that the Governor had designated him to be the consumer member. Since Derry's initial Board membership had already subjected him to Senate confirmation proceedings prior to being designated consumer member, Derry did not undergo Senate questioning relating to his expertise or qualifications to serve as consumer member. Petitioners assert that the way in which Derry was designated consumer member was invalid, thereby rendering the Board's composition illegal. This identical issue was addressed recently in *Finucane v. Pennsylvania Milk Marketing Board*, 135 Pa.Cmwlth.Ct. 606, 614–615, 581 A.2d 1023, 1027 (1990), in which we held that in spite of irregularities in designating the consumer member, "the Board is legally constituted under the *de facto*

**3.** Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. §§ 700j–101— 700j–1302.

doctrine." "[T]he official acts of one acting under color of title to a public office are given the same effect as the acts of a *de jure* official and are therefore legally binding until such *de facto* officials are ousted from office." *Commonwealth v. Levinson*, 480 Pa. 273, 282–83, 389 A.2d 1062, 1066 (1978).

■ This Court further noted in *Finucane* that the only remedy available to protest a *de facto* situation is a *"quo warranto"* action to try title or right to public office. Applying the *Finucane* rationale to this identical issue in the present matter, we do not find that the Board was illegally constituted.

■ The second issue raised by petitioners, determining whether the absence of two of the required three Board members and their communicating to the remaining Board member solely by speakerphone violated the open meeting rule, necessitates our examining the question within the legislative intent of the Sunshine Act. In repealing the "Open Meeting Law" and passing the Sunshine Act, which became effective on January 3, 1987, the Pennsylvania General Assembly intended to establish that the "public has a right to watch and examine the process of government as it functions, the deliberation of government as it meets and debates the subjects of that governmental unit." [4]

■ Furthermore, the Sunshine Act was intended to ensure the public's ability to witness and evaluate the actions of public officials to determine if, in fact, the public is being adequately represented.[5] The Sunshine Act's applicability

---

4. Legislative Journal—Senate, March 12, 1990, third consideration of SB 303, p. 779.

5. 65 P.S. § 272 provides:

(a) Findings.—The General Assembly finds that the right of the public to be present at all meetings of agencies and to *witness* the deliberation, policy formulation and decisionmaking of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society. (Emphasis added.)

extends to "agency business" in the form of the "framing, preparation, making or enactment of laws, policy or regulations ...," as well as "official action" encompassing the "establishment of policy by an agency," agency decisions on "agency business," and an agency's vote on any "motion, proposal, resolution, rule, regulation, ordinance, report or order." [6] One of the most significant changes that resulted from replacing the "Open Meeting Law" with the Sunshine Act was that acts of deliberation, discussion, and policy formulation, as well as formal action, now require open meetings. Senate discussions recorded during the Third Consideration of SB 303 (Sunshine Act) further reflect the legislative emphasis that "every unit of government is going to have to advertise their meetings and hold them in public places open to the public and records must be kept." [7]

■ In the present case, even though no expressly stated provision mandates actual physical presence of Board members when taking formal action, the legislative intent, when coupled with the use of the word "witness," requires the Board member's physical presence at that meeting.

The obvious intent of the Sunshine Act is to allow the public to see their representatives at work and observe their demeanor. Having Board members conduct a meeting by speakerphone, instead of attending in person, seriously vitiates the public's right to observe and assess the quality of the representation they are receiving. This type of telephonic communication clearly cannot replace actual attendance at the Board meeting without specific legislative authorization, nor can it qualify as a "quorum" of members as required under the Sunshine Act.[8] We, therefore, agree

(b) Declarations.—The General Assembly hereby declares it to be the public policy of this Commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon as provided in this act.

6. 65 P.S. § 273.

7. Legislative Journal at p. 779.

8. 65 P.S. § 274.

with petitioners that because no proper quorum of the Board was present, its official action in adopting Amended Order A–866 is invalid.[9]

Accordingly, Amended Order A–866 is vacated and the case is remanded to the Board for reconsideration at an open meeting consistent with the Sunshine Act, as previously discussed.

Due to our resolution of the matter regarding issues 1 and 2, we need not discuss issues 3, 4, and 5, as they have been mooted by our vacating the Board's order.

## ORDER

AND NOW, this 14th day of December, 1990, the general order of the Pennsylvania Milk Marketing Board, Amended Order A–866, in the above-captioned matter is vacated and this case is remanded to the Board for reconsideration at an open meeting. Said reconsideration cannot occur until a proper quorum of Board members in person is convened to conduct Board business.

Jurisdiction relinquished.

NARICK, Senior Judge, dissents.

NARICK, Senior Judge, dissenting.

I respectfully dissent. I reject the Petitioner's first position that the Board's decision was invalid because it was allegedly illegally constituted. However, I respectfully dissent that the Board violated the Sunshine Act in approving the Area 5 order when two members of the three member Board participated in and voted over speaker phones. There is no dispute that in compliance with the Act the Board gave notice to the public and all interested parties of the proposed meeting; that a meeting was held wherein the Board members along with persons in attendance at the meeting participated in the deliberations and thereafter the

9. 65 P.S. § 283.

Board conducted its vote in which three votes were publicly cast approving the Area 5 order.

There is nothing in the statute that refers to or prohibits voting by telephone. Nor has any case been cited that prohibits voting in a properly noticed public meeting in which Board members and attendees are present and a vote is taken by telephone. I view this as a case of first impression which may affect other administrative agencies taking official actions and voting by speaker telephones assuming compliance in all other respects with the requirements of the Act, i.e. notice to the public and interested parties and full participation by the Board members and attendees. Further, the action of the Board in my view is not inconsistent with the findings of the Act in assuring the enhancement of the Democratic process "that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society." Section 2 of the Sunshine Act, Act of July 3, 1986, P.L. 388, *as amended,* 65 P.S. § 272. The Board's action herein clearly was not conducted in secrecy.