584 A.2d 1069

**Helen C. FINUCANE, Leila Finucane and Michael Finucane, individually and on behalf of other Area 1 milk consumers and Consumer Education and Protection Association, Petitioners,**

**v.**

**PENNSYLVANIA MILK MARKETING BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1990.

Decided Dec. 18, 1990.

Thomas J. Finucane, Wingerd and Long, Chambersburg, with him, Irv Ackelsberg, Community Legal Services, Philadelphia, for petitioners.

Thomas M. Crowley, Chief Counsel, Harrisburg, for respondent.

John J. Bell, Camp Hill, for intervenor, Pennsylvania Farmers' Ass'n.

Donn L. Snyder, Boswell, Snyder, Tintner & Piccola, Harrisburg, for intervenor, Pennsylvania Food Merchants Ass'n.

J. Jackson Eaton, III, Gross, McGinley, LaBarre & Eaton, Allentown, for intervenor, Southeastern Pennsylvania Dairy Ass'n.

Allen C. Warshaw, with him, Donald A. Tortorice, Duane, Morris & Heckscher, Harrisburg, for intervenor, Pennsylvania Ass'n of Milk Dealers.

Before COLINS and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Helen C. Finucane, Leila Finucane and Michael Finucane, individually, and on behalf of other Area 1 milk consumers and Consumer Education And Protection Association (Consumers) file a Petition for Review (Petition) appealing the Commonwealth of Pennsylvania, Pennsylvania Milk Marketing Board's (Board) adoption of General Price Order (Order) A–863.

In February of 1990, the Board issued Order A–863 which established new minimum wholesale and retail prices for Milk Marketing Area 1.[1] In their Petition, the Consumers raise several legal challenges to the Order. We will address each issue seriatim.

■ The Consumers' first contention is that current Board member designated by the Governor as the "consumer member" was not properly "appointed" with the advice and consent of the Senate required by Section 201 of the Milk Marketing Law (Law), Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. § 700j–201.[2] They contend that the

1. Area 1 includes Philadelphia, Bucks, Montgomery, Chester and Delaware Counties.

2. Section 201 of the Law provides in pertinent part:

There is hereby created an independent administrative board to be known as the Milk Marketing Board. The board shall consist of *three members nominated and appointed by the Governor, by and with the advice and consent of two-thirds of all the members of the Senate,* for terms of six (6) years each, and until their successors shall have been appointed and qualified; ... Of the members appointed after the effective date of this amending act, *one shall be appointed to represent consumer interests* and shall have the responsibility under the direction of the board for directing the executive secretary to coordinate and supervise the Bureau of Consumer Affairs.

Board is illegally constituted and therefore lacks jurisdiction to issue General Price Orders.

This identical issue was addressed recently by this Court in *Finucane v. Pennsylvania Milk Marketing Board,* 135 Pa.Commonwealth Ct. 606, 614–615, 581 A.2d 1023, 1027 (1990), (*Finucane I*), where we held that although the member designated as a "consumer member" may have been improperly appointed, he is a *"de facto* member" and as such "we are constrained to hold that the Board is legally constituted." *See also Commonwealth v. Levinson,* 480 Pa. 273, 389 A.2d 1062 (1978). We went on to state that "the sole and exclusive remedy under a *de facto* scenario is to try title or right to public office in a *quo warranto* action" which goes to a person's right to hold a public office. *Finucane I,* 135 Pa.Commonwealth Ct. at 606–615, 581 A.2d at 1027.

Moreover, in a nearly identical case involving the issuance of the General Price Order for Milk Marketing Area 5, we followed *Finucane I* and held that the Board was legally constituted under the *de facto* doctrine. *Babac v. Pennsylvania Milk Marketing Board,* 136 Pa.Commonwealth Ct. 621, 584 A.2d 399 (Nos. 1096 and 1404 C.D.1990, filed December 14, 1990). Therefore, we find that the Board is legally constituted with the sole and exclusive remedy to oust an officeholder who does not properly hold that position being an action in *quo warranto.*

The Consumers' second contention is that the votes cast by the Board approving the Order and adopting Findings of Fact and Conclusions of Law violate the open meeting provision of the Sunshine Act (Act)[3] because only two Board members were physically present with a third mem-

The Governor shall *designate* one of the members of the board as chairman.
31 P.S. § 700j–201. (Emphasis added.)

3. Section 4 of the Act, Act of July 3, 1986, P.L. 388, *as amended,* 65 P.S. § 274, which states in pertinent part:
   Official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public.
   65 P.S. § 274.

ber voting by telephone during a conference call. The Consumers contend that a vote by telephone violates the purpose of the Act that votes be publicly cast, Section 5 of the Act, 65 P.S. § 275, and that the minutes record the names of members present, Section 6 of the Act, 65 P.S. § 276.

The pre-Order conference held on February 21, 1990, was attended by only two Board members; Wilkinson and Lanius, with Chairperson Derry participating by use of speakerphone from another location. At this meeting, the Board adopted Order A–863 with Wilkinson voting yes, Lanius abstaining and Derry casting the deciding yes vote by telephone. The Consumers further argue that on February 28, 1990, when the Board adopted the Findings of Fact and Conclusions of Law, again only two members were physically present. This time Board member Wilkinson participated by telephone, voting along with Derry, to adopt, with Lanius abstaining.

The Board contends that although the Act itself does not explicitly allow telephone conference call votes, the definition of a "meeting" as "[a]ny pre-arranged gathering of an agency which is attended *or participated in* by a quorum of members", 65 P.S. § 273, (emphasis added), implicitly allows participation by telephone. The Board also points to a 1974 Opinion of the Attorney General which stated that:

> A meeting or hearing of an agency is any assemblage, whether in person or by telephone, among at least a majority or the quorum of the members of an agency, at which the participants enter into an agreement as to the vote or policy matters which will be the subject of subsequent formal action by that agency.

1974 Op.Atty.Gen. No. 46.

This identical issue was recently addressed by this Court in *Babac*, where only one Board member was physically present, with the other two casting their votes by telephone. This Court held that although the Act does not explicitly require actual physical presence, the legislative intent, coupled with the use of the word "witness" in the legislative

findings,[4] "requires the Board member's physical presence at that meeting." *Babac*, 136 Pa.Commonwealth Ct. at 627, 584 A.2d at 402. We went on to state that:

> The obvious intent of the Sunshine Act is to allow the public to see their representatives at work and observe their demeanor. Having Board members conduct a meeting by speakerphone, instead of attending in person, seriously violates the public's right to observe and assess the quality of the representation they are receiving. This type of telephonic communication clearly cannot replace actual attendance at the Board meeting without specific legislative authorization, nor can it qualify as a "quorum" of members as required under the Sunshine Act. We, therefore, agree with petitioners that because no proper quorum of the Board was present, its official action in adopting Amended Order A–866 is invalid. (Footnotes omitted.)

*Babac*, 136 Pa.Commonwealth Ct. at 627–628, 584 A.2d at 402.

Other jurisdictions have also held that absent specific legislative authorization, telephone conference calls are not an open meeting as required by this type of legislation. The Supreme Court of Virginia in *Roanoke City School Board v. Times–World Corp.*, 226 Va. 185, 195, 307 S.E.2d 256, 261 (1983), held that a telephone conference call was not a "meeting" within the open meeting provision of the Virginia Freedom of Information Act, stating:

**4.** Section 2 of the Act provides:

(a) Findings.—The General Assembly finds that the right of the public to be present at all meetings of agencies and to *witness* the deliberations, policy formulation and decision making of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society. (Emphasis added.)

(b) Declaration.—The General Assembly hereby declares it to be the public policy of this Commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon as provided in this act.

65 P.S. § 272.

"Irrespective of one's preferred definition [of a "meeting"], whether it be coming together, assembling, gathering, or meeting, the *physical* presence of the participants is essential. A telephone conference call does not qualify. A participant in a telephone call can communicate with others, listen to them, speak and be heard, but none of this is done in the physical presence of individuals who have come together, met, assembled, and are "sitting" as a body or entity." (Emphasis in original.)

The court went on to state that it was up to the legislature to provide otherwise.[5]

The Supreme Court of Vermont also held that telephone conference calls violated Vermont's Public Meetings Law in *State v. Vermont Emergency Board*, 136 Vt. 506, 394 A.2d 1360 (1978). The court, in finding a violation of the open meeting provision stated that:

"We are directed to no authority, by either party, dealing with the subject of attendance at a "meeting" through the medium of a telephone conference call. However useful its role in formulating policy, it has serious drawbacks as a means of putting that policy into effect. Questions of identity of a claimed participant could easily arise. The personal contact that is so often an effective ingredient of a meeting is absent. Whatever may be the future status of such participation, if and when specifically authorized, we cannot countenance it now, in absence of some clear provision for it. Immediately suggested is the rhetorical question of how public participation in such a meeting, the goal of the legislation under consideration, could be achieved, even with the advance notice contemplated by the statute. Not only the "right-to-know" is protected by the statute, but also the right to be present, to be heard, and to participate."

*State v. Vermont Emergency Board*, 136 Vt. at 508, 394

5. The Virginia legislature subsequently amended their Freedom of Information Act with explicit statutory language authorizing telephone conference calls. *See* Va.Code Ann. § 2.1–341 (1988).

A.2d at 1361.[6]

■ Since our legislature has not explicitly provided for open public meetings by the use of telephone conference calls, we are constrained to hold that they are a violation of the Act's intent to provide that meetings be open to the public. Thus, the votes cast by telephone were invalid, making the vote to adopt the Order one in favor, one abstention, and the vote to adopt the Findings of Fact and Conclusions of Law one in favor, one abstention, in which case, the votes fail for a lack of a majority.

Accordingly, Order A–863 is vacated and the case is remanded to the Board for reconsideration at an open meeting consistent with the Sunshine Act, as previously discussed.

Due to our resolution of this matter, we need not discuss the other issues raised by Consumers as they have been mooted by our vacating the Board's order.

## ORDER

AND NOW, this 18th day of December, 1990, the General Price Order A–863 of the Pennsylvania Milk Marketing Board effective March 1, 1990 is vacated and the case is remanded to the Board for reconsideration consistent with this opinion.

Jurisdiction relinquished.

---

**6.** Like Virginia, Vermont's legislature also amended its Public Meetings Law to provide explicit approval of the use of telephone conference calls. *See* Vt.Code Ann. tit. 1, § 312 (1987). *See also* Mont.Code Ann. § 2–3–202 (1989), where the Montana legislature has explicitly provided for telephone conference calls.