593 A.2d 1337

**Norbert BABAC and Ann Martin Criss, individually and on Behalf of all other Area 5 milk consumers, Petitioners,**

**v.**

**PENNSYLVANIA MILK MARKETING BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1991.

Decided June 24, 1991.

Reargument Denied Aug. 7, 1991.

Thomas J. Finucane, for petitioners.

Thomas Crowley, for respondent.

Donald Tortorice and Donn L. Snyder, for intervenors.

Before CRAIG, President Judge, DOYLE, J. (P), and BARRY, Senior Judge.

CRAIG, President Judge.

Norbert Babac and Ann Martin Criss (petitioners) appeal an order of the Milk Marketing Board that fixed prices for fluid milk and milk products in the Western Milk Marketing Area (Area 5).

The board initially adopted order A–866 on April 23, 1990, setting prices for fluid milk products in the board's Area 5. However, the petitioners appealed that order to this court, which vacated the order because of the board's failure to

comply with the Sunshine Act's [1] provision requiring a quorum of board members to be present at meetings. *Babac v. Milk Marketing Board,* 136 Pa.Commonwealth Ct. 621, 584 A.2d 399 (1990). The board, acting in compliance with the Sunshine Act, readopted the order on December 20, 1990, and this appeal followed. The board is the respondent.

The issues the petitioners raise on appeal are: (1) whether the board abused its discretion and erred as a matter of law because the dealers did not provide evidence of their aggregate milk sales; (2) whether the board abused its discretion by providing potential discounts for retailers but not schools; (3) whether, assuming the board's order is reversed, an appropriate remedy in this case would be to delay the effective date of a future order establishing new minimum prices in order to offset prices charged under the order now at issue.

## 1. Aggregate milk sales

Section 801 of the Milk Marketing Law, Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. § 700j–801, is the sole statutory provision at issue, and reads in pertinent part as follows:

The board shall base all prices upon all conditions affecting the milk industry in each milk marketing area, including the amount necessary to yield a reasonable return to the producer, which return shall not be less than the cost of production and a reasonable profit to the producer, of the quantity of milk necessary to supply the consumer demand for fluid milk plus a reasonable reserve supply as determined by the board, and a reasonable return on *aggregate sales by milk dealers or handlers.* (Emphasis added.)

As indicated in section 801, the phrase at issue in this case, "aggregate sales by milk dealers or handlers," is used in the context of the statutorily prescribed method for determining proper minimum pricing that is sufficient to provide a reasonable rate of return to dealers on price-

1. Act of July 3, 1986, P.L. 388, § 4, 65 P.S. § 274.

controlled products. Contrary to one characterization of the petitioners' claim in the board's brief, this court does not regard the claim as seeking to require the board to consider evidence of income and profit from non-price-controlled products.

■ Initially, the board contends that the doctrine of collateral estoppel or issue preclusion is applicable to the petitioners' first issue, asserting that this court resolved the same issue in *Finucane v. Pennsylvania Milk Marketing Board*, 132 Pa.Commonwealth Ct. 85, 572 A.2d 27 (1990).

In *Finucane* this court viewed the petitioner's claim as calling for dealers to provide evidence of inadequate income from aggregate milk sales in order to qualify for a new minimum price order. Specifically, the court characterized the claim as seeking a *threshold* demonstration of *inadequate* income. A dissenter in the case disagreed with the majority's characterization of the claim as merely challenging the board's procedure, stating that, in his opinion, section 801 contains a substantive requirement that the board consider evidence of aggregate milk sales.

■ However, *Finucane* does not resolve conclusively the distinct issue the petitioners present in this case; here the petitioners call for proof of income from aggregate sales of milk products as a factor in the determination of minimum prices. Essentially, the petitioners believe that the Law's reference to aggregate sales means that, where a dealer receives profits or income above the minimum prices, that factor should enter into the methodology the board uses to establish new minimum prices.

Hence, the petitioners assert, if profits are high, the board theoretically should reduce the minimum prices so that the dealers' overall profits on price-controlled products remains in line with the appropriate minimum price (costs plus reasonable return).

Although evidence of actual sales income is a means of introducing actual market conditions into the methodology used to set minimum milk prices, the methodology that section 801 contemplates by its terms is limited to setting

minimum prices by projecting costs and adding a reasonable return factor (not greater than three-and-one-half percent) in order to determine what a reasonable return from aggregate milk sales would be, based upon that minimum price.

There is no express provision in section 801 that calls for the introduction of evidence of actual market conditions in order to offset above-minimum returns from some price-controlled products against low minimum returns from other price-controlled products. Nor can this court read into the section any gloss to that effect. Thus, this court's conclusion is that the board did not abuse its discretion by not requiring evidence of actual income from aggregate sales.

### 2. School discount

The second issue the petitioners raise is whether the board erred in failing to provide schools with the opportunity to buy milk at the same discount provided to retailers for purchases of equal volumes of milk.

The petitioners claim that there is no evidence in the record to justify this allegedly disparate treatment. On the other hand, the board asserts that the Law does not require evidence relating to schools in this case, because provisions in existing board orders remain effective until a party offers evidence that establishes the invalidity of a particular provision.

Indeed, section 801 does require a party seeking to alter the existing components of an order setting minimum milk prices to bear the burden of establishing that particular provisions of the order are not valid. As this court indicated in *Lily Penn Food Stores, Inc. v. Pennsylvania Milk Marketing Board*, 80 Pa.Commonwealth Ct. 266, 272, 472 A.2d 715, 719 (1984), section 801 specifically provides that

> *all provisions* of all price fixing orders of the Board *shall be presumed to be valid,* and the burden of proving any invalidity of any provisions thereof shall be upon the person asserting the same. (Emphasis added.)

■ In this case, no provision of the pre-existing order provided for school discounts. There is no burden in such a case upon the party seeking a change in minimum prices to establish reasons why school discounts are not appropriate; the burden rests with those objecting to a particular provision in an order to establish why a school discount is appropriate and, in a case such as this, why the failure of the board to grant a discount is discriminatory.

■ Here, the board did not alter the amount of discount to retailers from the existing order. The sole change with respect to discounts related to the definitions concerning the method by which the discount is determined. The testimony of Carl Herbein indicates that the change related to delivery size requirements for the multi-store component of the price order. His testimony indicates that the proposed order changed the wording of the following provision, by inserting the word "all" (indicated by underlining) for the word "each":

> [D]elivery size per store equals the aggregate deliveries to *all* stores served by the primary supplier within the group divided by the number of stores served by the primary supplier. Average pertains to each delivery during the one-week period from 12:01 A.M. Monday to 12:01 A.M. Monday.

N.T. 163–4.

In response to a question counsel for the Milk Producers Association posed to Mr. Herbein, the witness indicated that the change would have no impact on consumers.

■ There is no evidence in the record to support the petitioners' claim that the failure to provide schools with the same discount provided to retailers is discriminatory. The petitioners had the burden to establish that the discount component of the existing order was discriminatory. The discount provision, which had been in effect before the board adopted the order at issue, and which the board did not substantively alter, retains a presumption of validity. Section 801 of the Law, 31 P.S. § 700j–801.

### 3. Remedy

The last issue the petitioners raise concerns the appropriate remedy in a Milk Marketing Board price-setting case in which a court determines that board set minimum prices are erroneous.

The petitioners ask this court to delay the effective date of any new board order for a period of time equal to the time an improper order has been in effect, to provide an offsetting reduction to consumers. Our resolution of this case leaves no reason to address this last issue.

Accordingly, the order of the Milk Marketing Board is affirmed.

### ORDER

NOW, June 24, 1991, the order of the Pennsylvania Milk Marketing Board, General Price Order A–866, dated December 20, 1990, is affirmed.